UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYRISS WINSTON,

    Plaintiff,

v.

CONNIE GIPSON, et al.,

    Defendants.

Case No. 20-cv-06470-DMR (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Myriss Winston, who is currently incarcerated at Salinas Valley State Prison ("SVSP"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The operative complaint is the amended complaint. Dkt. 8.

The parties are presently before the court on Defendants' motion for summary judgment. Dkt. 29. Plaintiff filed an opposition, and Defendants filed a reply. Dkts. 32, 33. Having read and considered the papers submitted and being fully informed, the court hereby GRANTS Defendants' motion for summary judgment.

## II. BACKGROUND[1]

### A. Procedural Background

Plaintiff initially filed a complaint alleging that California Department of Corrections and

---

[1] This Order contains a few acronyms and abbreviations. Here, in one place, they are:

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| DOM | Department Operations Manual |
| RLUIPA | Religious Land Use and Institutionalized Persons Act |
| RPPM | Religious Personal Property Matrix |
| RRC | Religious Review Committee |
| SRRC | Statewide Religious Review Committee |
| SVSP | Salinas Valley State Prison |
| Title 15 | Title 15 of California Code of Regulations |

Rehabilitation ("CDCR") officials have interfered with his ability to practice his religion.  Dkt. 1 at 5-9.[2]

On March 30, 2021, the court issued an Order of Dismissal With Leave to Amend.  Dkt. 7.

On April 26, 2021, Plaintiff filed his amended complaint.  Dkt. 8.  Plaintiff has named the following prison official at CDCR—Director of Division of Adult Institutions Connie Gipson.  *Id.* at 1.  He has also named SVSP Warden M. B. Atchley.[3]  *Id.*  Plaintiff is seeking injunctive relief and monetary damages.  *Id.* at 4.

In its March 30, 2021, the court summarized Plaintiff's claims from his original complaint, as follows:

> Here, Plaintiff professes to be an adherent of the "Thelema Religion" and expresses his beliefs with the possession and use of "religious artifacts [and] tobacco products (i.e., loose tobacco, cigarettes, cigars, ritual herbal smokes/blends, cigarette lighter, rolling papers and smoking pipe), incense sticks/cones, cologn[e]s, perfumes, and oils (different fragrances and uninterrupted access)."  Dkt. 1 at 5.  Plaintiff alleges that as part of his religious practices of "Thelema," [i]t is [his] right to obtain, possess, and use [the aforementioned] items under the Free Exercise Clause of the First Amendment . . . ."  *Id.* at 5-6.  However, he claims that CDCR and SVSP officials have prevented him from purchasing or receiving tobacco products in the mail, which has interfered with his ability to practice his beliefs.

Dkt. 7 at 5.

As mentioned above, the court reviewed Plaintiff's original complaint and dismissed it with leave to amend.  Dkt. 7.  The court determined that as a "threshold matter," the complaint "fail[ed] to plausibly allege that Thelema is a variety of religious faith," and stated as follows:

> Third-party sources describe it as an occult philosophy, which would likely take it out of the realm of protected religious activity.  *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).  It is also not at all clear how the use of tobacco products (or any of the aforementioned "religious artifacts") is an essential part of the Thelema belief

---

[2] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

[3] The court notes that Plaintiff previously named former CDCR Secretary Ralph Diaz as a Defendant.  Because plaintiff did not name Defendant Diaz in his amended complaint, the court dismissed all claims against Defendant Diaz.  *See* Dkt. 9 at 1, 5.

> system. If Plaintiff chooses to amend, he will need to plausibly allege that Thelema is religious in nature, and requires use of tobacco products or the aforementioned "religious artifacts."

*Id.* at 5-6. The court then added that Plaintiff only named supervisors as Defendants, and it dismissed his claims against Defendants Diaz and Gipson with leave to amend because Plaintiff presented:

> no specific allegations against these Defendants other than stating they are responsible for "enforcing United States and State Constitutional rights, federal and state statutes, government codes, government regulations, and executive orders on the Director, prisons and prisoners when violations occur" (Defendant Diaz) and for "passing and enforcing rules, policies and regulations that pertain to prisons within the CDCR and those inmates that are housed in those prisons" (Defendant Gipson).

*Id.* at 6 (quoting Dkt. 1 at 5). The court further instructed Plaintiff as follows:

> To obtain some of the relief that Plaintiff seeks, he must identify the specific Defendants who denied him tobacco products/"religious artifacts" and describe their actions. Plaintiff should describe the Defendants he spoke to or corresponded with regarding his attempts to obtain tobacco products/"religious artifacts" and their responses. Simply pointing to documents attached as exhibits is insufficient. He must identify them as Defendants and describe their actions in the body of the complaint.

*Id.* Thus, the court dismissed the complaint and granted Plaintiff leave to prepare a proper amended complaint that is "consistent with federal pleading standards." *Id.*

Plaintiff then filed an amended complaint, *see* Dkt. 8, which the court reviewed under 28 U.S.C. § 1915A on October 12, 2021, *see* Dkt. 9.

Upon giving the amended complaint the liberal construction to which it is entitled, the court found that it stated cognizable claims for violation of Plaintiff's First Amendment right to the free exercise of religion. Dkt. 9 at 5. The court further found that Plaintiff's allegations in the amended complaint also implicate the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and stated that RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a

3

compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

*Id.* (quoting 42 U.S.C. § 2000cc-1(a)). The court found that the amended complaint adequately linked Defendants Gipson and Atchley, and it directed service on these defendants.[4] *Id.* at 5-6.

### B. Factual Background

#### 1. Relevant Background and Procedure for Requesting to Purchase Religious Artifacts

The following relevant background on the procedure for requesting to purchase religious artifacts (including religious practices tobacco products, incense sticks/cones, perfumes and oils) is undisputed unless noted otherwise.

Since 2005, the California State Legislature has prohibited state prisoners from possessing or using tobacco products, except in departmentally approved religious ceremonies. *See* Cal. Penal Code § 5030.1(a). The Legislature identified several benefits to the restriction, including increased prison safety, improved inmate health, and reduced operational costs. *See, e.g.*, Jun. 1, 2004 Hearing on A.B. 384 Before the S. Comm. on Pub. Safety, 2003-2004 Legis. (Cal. 2004) (bill analysis). Through Title 15 of California Code of Regulations ("Title 15"), the CDCR enforces the statute by largely prohibiting any possession or use of tobacco products "on the grounds of any institution/facility that houses or detains inmates," with discretion to permit inmates' use of tobacco products in departmentally approved inmate religious ceremonies. Cal. Code Regs. tit. 15, § 3188(c)(1).

California state prisoners may possess and use personal religious properties purchased from departmentally or locally approved vendors. *See* Cal. Code Regs. tit. 15, § 3190(b), (k)(4). Specifically, the Religious Personal Property Matrix ("RPPM") lists all items that state prisoners may purchase, possess, or use. *Id.* § 3190(b). Under the RPPM, prisoners generally cannot possess or use any tobacco products, incense, colognes, or perfumes, but general population inmates may possess and use up to four ounces of prayer oil.[5]

---

[4] The court did not make any determination about whether Thelema is religious in nature. *See generally* Dkt. 9.

[5] As mentioned, Plaintiff requested these items and included them in his declaratory and injunctive relief. Dkt. 8 at 14.

4

Each institution's warden must "make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates . . . ." *See* Cal. Code Regs. tit. 15, § 3210(a). Institutions may provide accommodations for religious services that are "in keeping with facility security and other necessary institutional operations and activities." *Id.* § 3210(c). "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee ("RRC") for review and consideration." *Id.* § 3210(d). "Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution." *Id.*

If the California Penal Code or Title 15 proscribe a religious exercise, inmates may request approval to engage in said exercise by submitting a CDCR Form 3067 to their respective housing institution's RRC. *See* Richey Decl. at ¶ 8, Ex. 2. The RRC also reviews custody staff's recommendation to disapprove requested religious items. *Id.* at ¶ 7. After its review, the RRC forwards its recommendation to the Statewide Religious Review Committee ("SRRC") using a CDCR Form 2279. *Id.*, Ex. 1.

At the SRRC, a subcommittee comprised of a warden, community resource manager, and legal counsel will review the RRC's recommendation. *Id.* at ¶ 9. The full SRRC will then deliberate and vote on the recommendation for a final decision. *Id.* "SRRC's review and approval process does not differ based on the nature or identity of the requesting religious, faith, or spiritual group or belief." *Id.* at ¶ 10. "The process also does not take into account the requesting inmates' personal identifying information, such as race, ethnicity, ancestral heritage, nationality, gender, sexuality, age, disability, or others, that are not relevant for its review and approval process." *Id.*

### 2. Plaintiff's Version

The following background relating to Plaintiff's claims is taken from the court's October 12, 2021 Order reviewing the amended complaint:

> . . . Plaintiff specifically alleges that CDCR prison officials impermissibly burdened the practice of his religion by limiting his ability to order/purchase "religious practices tobacco products, incense sticks/cones, perfumes and uninterrupted access to oils of his choice." *See* Dkt. 8 at 8. Plaintiff states that he is a "follower of the

5

Religion of Thelema which is a variety of Religious Faith and recognize [sic] as a Religion incorporated in the State of California as a not-for-profit religious organization." *Id.* at 3. Plaintiff claims that he has a "sincere and genuine belief in the practices of the religion of Thelema . . . [and] [h]e has been practicing for over four years now and since [his] arrival at [SVSP] [and he] continues to practice Thelema with other Thelema followers." *Id.* at 7.[6]

Plaintiff states that "[p]risoners in the past [were] allowed to use, possess and smoke tobacco products in prison under the California legislature ban[ned] tobacco products from prisons with the exception that prisoners shall be allowed to use and possess tobacco products for their religious ceremonies." *Id.* at 8. Plaintiff further claims that "[p]risoners in the pas[t] had no limit on the religious artifacts they could obtain and use for religious practice until the Director of Division of Adult Institutions [Defendant Gipson] passed regulations via emergency measures creating a list of religious items [that] all religions shall be allowed to use. *Id.* Plaintiff explains that the list is called the "Religious Personal Property Matrix [('RPPM')]." He claims that the CDCR "has regulations that require inmates to purchase religious items only from Departmental and local vendors, and none of those vendors sell tobacco." *Id.* In addition, the "RPPM does not list incense, colognes and perfumes as an item prisoners may purchase and oils are limited to the amount of four ounces or less ever[y] three months with the limited fragrance selections of kyphi, frankinmyrrh, sage, cedar, musk and lavender [and] with all other fragrances ban[ned]." *Id.* Plaintiff claims that he "practices and expresses his belief[s] . . . through the use of tobacco products, incense, colognes, perfumes and different fragrances of oils in different rituals, ceremonies, rites that he performs daily . . . ." *Id.*

Plaintiff alleges that on December 12, 2019, he filed a 602 inmate appeal seeking to obtain for his religious practices the aforementioned religious items or that "his family and friends be allowed to send him the tobacco products since the [CDCR] did not have a vendor that s[old] tobacco products." *Id.* On January 7, 2020, Plaintiff's 602 appeal was denied "on the grounds that for the safety and security of all CDCR institutions . . . ." *Id.* Plaintiff attempts to link Defendants by stating that Defendant Atchley is liable "as the warden [who] is responsible to provide the religious welfare of Plaintiff" and that this Defendant has a "policy as warden that tobacco products are not allowed at SVSP because he considered it as contraband . . . ." *Id.* at 9. As mentioned above, Plaintiff claims that Defendant Gipson is responsible for creating the "RPPM regulation that limit[s] prisoner[']s purchase of no more than four ounces every three months and limit[s] [such purchase] to a selection of six different fragrances" and that this "denies Plaintiff[']s] uninterrupted access to the religious oils needed for his religious practice . . . ." *Id.* at 10. Finally, Plaintiff claims that "Defendants Gipson and Atchley lacked penological and/or security justification to deny Plaintiff[']s] religious exercises and practices in the manner as described above during his entire stay

---

[6] In this Order the court need not determine whether Thelema is religious in nature because even assuming it is, it finds that no constitutional violation exists.

at [SVSP]." *Id.* at 11.

Dkt. 9 at 3-5 (brackets and footnote added).

### 3. Defendants' Version

Plaintiff is a Thelema believer. Theodore Lee Decl., Ex. 1 (Pl.'s Depo.) at 20.[7] Plaintiff claims to practice and express his Thelemic belief by using tobacco products, incense, cologne, perfumes, and different fragrances of prayer oil in different rituals, ceremonies, and rites that he performs daily. *Id.* at 38-40. Plaintiff alleges Thelema requires him to have in his cell an altar, on which he must place his religious artifacts in order for him to practice his religion. *Id.* at 42.

Plaintiff contends California state prisoners could possess and use tobacco products in the past. *See* Dkt. 8 at 8. He asserts prisoners had no limit on the religious artifacts they could obtain and use for religious practice until CDCR passed regulations to regulate what items prisoners can possess. *Id.*

Plaintiff was unable to obtain items that he wishes to use in his religious exercise because of Title 15 regulations that have limited the type and quantity of personal religious items that he can possess and use. *Id.* Plaintiff believes both Defendants, through their respective roles, enforced the regulatory ban on Plaintiff's ability to obtain and use items that he claims are necessary for his religious practices. *Id.* at 10-11. Plaintiff accuses both Defendants of violating his rights under the First Amendment and RLUIPA. *Id.* at 11-13.

Plaintiff seeks declaratory relief finding Defendants' actions as alleged violated Plaintiff's federal religious rights. *Id.* at 14. He also seeks relief declaring CDCR officials' failure to allow every state prisoner who follows Thelema to have uninterrupted possession and use of tobacco products, prayer oil, and various scented material of their choice a violation of the federal Constitution and RLUIPA. *Id.* Plaintiff asks for permanent injunctive relief authorizing him to receive tobacco products, prayer oil, and scented material of his choice from vendors of his choice, including those that his family and friends will send, while he claims remains under CDCR's custody. *Id.* Lastly, Plaintiff seeks costs and other relief, as the court deems necessary. *Id.* at 15.

---

[7] In citing to Plaintiff's deposition, the court refers to the page numbers on the bottom of each page instead of those assigned by the court's electronic case management filing system.

Defendants claim that on January 7, 2020—over eight months before Plaintiff filed the instant action—SVSP's chief deputy warden informed Plaintiff in writing that he could seek religious accommodation for the items at issue "by submitting a [CDCR Form] 2279 to [RRC,] which has been included with this response." Pl.'s Depo. at 99-100. Defendants state that Plaintiff admitted at his deposition that he never used the available procedures to seek approval nor sought help to understand what the procedure entailed. *Id.* at 101-05. The CDCR Form 2279 has been available to inmates since December 2014. Richey Decl. at ¶ 7, Ex. 1.

Defendants claim that no institutional RCC, nor the SRRC, has ever received or reviewed any requests from Plaintiff to possess and use restricted items under Title 15 for his religious exercise. Richey Decl. at ¶ 11. They further stress that had Plaintiff sought accommodation for his religious exercise, both SVSP's RCC and the SRRC would have reviewed it and rendered a resolution comporting with relevant policies and procedures. *See id.* at ¶ 12.

### III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the

pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Submitted by Defendants in support of the motion for summary judgment are Plaintiff's deposition (Theodore Lee Decl., Ex. 1) as well as declarations by Religious Programs Oversight Unit Manager/Chaplain C. Richey, Deputy Attorney General Theodore Lee (Defendants' attorney), Reception Centers Mission Captain J. Penney, and Chief of the Office of Policy Standardization[8] S. Pulley along with various supporting exhibits (Dkts. 29-2, 29-3, 33-1, 33-2). Meanwhile, Plaintiff has filed his verified amended complaint, declaration, and opposition to Defendants' motion for summary judgment. Dkts. 8, 32. The court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal

---

[8] The Office of Policy Standardization collects data on contraband that inmates smuggle into individual correctional facilities under CDCR's jurisdiction to formulate and implement CDCR-wide policies that seek to deter, discourage, and detect such smuggling activities. Pulley Decl. at ¶ 3.

knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

**IV. DISCUSSION**

As mentioned above, on October 12, 2021, the court determined that Plaintiff stated cognizable claims under RLUIPA and the First Amendment's Free Exercise Clause against Defendants. Dkt. 9 at 5. Specifically, Plaintiff alleges that Defendants limited his ability to purchase "religious practices tobacco products, incense sticks/cones, perfumes and uninterrupted access to oils of his choice," in violation of his rights under the First Amendment and RLUIPA. *See* Dkt. 8 at 8. It seems that Plaintiff specifically argues that Defendants were responsible for instituting policy that denied Plaintiff's access to tobacco products and uninterrupted access to the religious oils that are "needed for his religious practice . . . ." *Id.* at 9-10. Plaintiff argues that "Defendants Gipson and Atchley lacked penological and/or security justification to deny Plaintiff['s] religious exercises and practices . . . during his entire stay at [SVSP]." *Id.* at 11. The court points out that in his opposition, Plaintiff mostly focusses his claim on Defendants' specific denial of access to "tobacco products," *see* Dkt. 32 at 7-10, only minimally focusses on Defendants allegedly "enforcing regulatory limits on prayer oil and scented material," *id.* at 10-11, and does not focus at all on any alleged denial of access to any other religious artifacts, *see id. generally*. Thus, the majority of the court's discussion below will focus on Defendants' alleged denial of Plaintiff's access to tobacco products and prayer oils, which he claims are required for his religious practice.

In their motion for summary judgment, Defendants claim that they did not violate Plaintiff's rights under the constitution or RLUIPA, stating as follows:

> Defendants are entitled to summary judgment in their favor because evidence shows that they did not violate Plaintiff's federal religious rights under RLUIPA and the First Amendment. Plaintiff is unable to show that he has suffered any substantial burden from Defendants' enforcement of the regulations at issue. Additionally, the regulations that Defendants enforced furthered compelling governmental interests in the least restrictive means available, which passes scrutiny under both RLUIPA and the First Amendment. Separately, Defendants are qualifiedly immune because federal law has not clearly established at the time at issue here that adoption and enforcement of regulations that restrict certain personal religious

10

items but allow exemptions violates Plaintiff's religious rights.
Dkt. 29-1 at 12.

### A. RLUIPA

RLUIPA provides that no state may impose a "substantial burden" on an inmate's exercise of religion unless the action or policy in question provides the least restrictive means of serving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define "substantial burden." *See* 42 U.S.C. § 2000cc-5. The Ninth Circuit, however, has held that a "substantial burden" on "religious exercise" is one that imposes "a *significantly great* restriction or onus upon such exercise." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013) (emphasis added) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Religious exercise," for RLUIPA purposes, includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The exercise of religion may involve not only the belief and profession, but the performance of physical acts such as group assembly for worship. *See Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

The first step in a RLUIPA inquiry is to define the religious exercise at issue. *Greene v. Solano County Jail*, 513 F.3d 983, 987 (9th Cir. 2008). The plaintiff bears the burden of coming forward with evidence demonstrating the state's action or policy constituted a substantial burden on his exercise of religion. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). The focus of this initial inquiry necessarily is on the manner in which the plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation. *Id.* at 995. Once the plaintiff has met his initial burden of showing a substantial burden on his exercise of religion, the burden shifts to the government to show that the burden imposed is in furtherance of a "compelling" government interest (rather than simply a legitimate penological interest), and that it achieves the compelling interest by the least restrictive means. *See* 42 U.S.C. § 2000cc-1(a); *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008).

Defendants argue as follows:

> Dispositive evidence shows that Plaintiff inexcusably elected to not seek available religious accommodation for his religious exercise. In

11

> turn, Plaintiff's inaction demonstrates Defendants never substantially burdened his religious exercise. Because Plaintiff failed to show a substantial burden traceable to Defendants, Plaintiff failed to state a RLUIPA claim and the Court should dismiss it.

Dkt. 29-1 at 12.

The court finds that on the evidence in the record, no rational trier of fact could find in Plaintiff's favor on a RLUIPA claim. He fails to provide any evidence that his religious practice was substantially burdened by Defendants' actions. *See Warsoldier*, 418 F.3d at 994-95. As explained below, Defendants are entitled to judgment as a matter of law on the RLUIPA claim.

First, while Title 15 included a tobacco-products restriction, there exists an exception for inmates' tobacco products use in departmentally approved inmate religious ceremonies. *See* Cal. Code Regs. tit. 15, § 3188(c)(1). The record shows that SVSP permits inmates to purchase and use prayer oils in accordance with the current RPPM. *See* Penney Decl. at ¶ 8; Pulley Decl. at ¶ 8. All item and quantity restrictions identified in the RPPM relate to promoting institutional security and safety for all inmates and CDCR personnel. Penney Decl. at ¶ 7; Pulley Decl. at ¶ 7.

Second, the record shows that Defendants have presented evidence that on January 7, 2020, which was prior to the filing of this lawsuit, SVSP's chief deputy warden informed Plaintiff in writing that he could seek religious accommodation for the items at issue by submitting a CDCR Form 2279 to the RRC at SVSP. *See* Pl.'s Depo. at 99-100. Defendants have also presented evidence that no institutional RCC, nor the SRRC, has ever received or reviewed any requests from Plaintiff to possess and use any of his alleged restricted religious items. *See* Richey Decl. at ¶ 11. The record also shows that Plaintiff admitted at his deposition that he never used the available procedures to seek approval nor sought help to understand what the procedure entailed. *See* Pl.'s Depo. at 101-05.

The evidence shows that Plaintiff knew, or should have known, that he had ample opportunities to request and possibly secure an accommodation for the items at issue. *See* Pl.'s Depo. at 99-104; Richey Decl. at ¶¶ 7-8, 11. However, he elected to not seek such an accommodation. *Id.* Moreover, he fails to allege that Defendants ever impeded his effort to secure any religious accommodation or otherwise made an accommodation practically impossible. *See generally* Dkt. 8. Instead, in his opposition, Plaintiff makes a conclusory statement about this

religious accommodation or "exception," stating that the prison "never has give[n] said exemption to any prisoner since the exemption has been in place." Dkt. 32 at 9. He also improperly attempts to shift the evidentiary burden back to Defendants, accusing them of failing to offer evidence of an instance in which prison officials granted a request to use tobacco products in religious ceremonies. *See id.* However, Defendants argue in their reply that "this litigation is focused on whether Plaintiff faced substantial burden due to Defendants' enforcement of Title 15, section 3188(c), not whether the California prison system substantially burdened all of its inmates' religious exercise." Dkt. 33 at 4. Defendants further argue that "California prison officials cannot consider an exemption—much less grant it—for Plaintiff to use tobacco products in his Thelema practices, unless he properly seeks that exemption through the available channels." *Id.* The court agrees with Defendants, and it finds unavailing Plaintiff's argument in his opposition. As mentioned above, Plaintiff could have sought religious accommodations as he was instructed to do so by SVSP officials, but he chose not to. *See* Pl.'s Depo. at 99-104; Richey Decl. at ¶¶ 7-8, 11. The undisputed failure to take steps to seek an accommodation through well-established channels forecloses any argument that he experienced a substantial burden in his religious exercise. *See id.*

In sum, on the evidence in the record, no rational trier of fact could find in Plaintiff's favor on a RLUIPA claim because Plaintiff fails to provide any evidence that Defendants substantially burdened his exercise of religion. *See Warsoldier*, 418 F.3d at 994-95. Because Plaintiff has not met his initial burden of showing a substantial burden on his exercise of religion, the burden need not shift to the government to show that the burden imposed is in furtherance of a "compelling" government interest and that it achieves the compelling interest by the least restrictive means. *See* 42 U.S.C. § 2000cc-1(a); *Shakur*, 514 F.3d at 889. Accordingly, Defendants are thus entitled to judgment as a matter of law on the RLUIPA claim.

### B. First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and

13

noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The free exercise right is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. *See O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). In order to prevail on a free exercise claim, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

The Supreme Court has identified four factors for courts to consider when determining whether a regulation or practice is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "'exaggerated response' to [prison] concerns." *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (citation omitted). The task in considering the *Turner* factors is not to balance the four factors, but, rather, to determine whether the state shows a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one. *Beard v. Banks*, 548 U.S. 521, 533 (2006). While all justifiable inferences must be drawn in the nonmoving party's favor with respect to matters of disputed fact, the court's inferences must accord deference to the views of prison authorities in disputed matters of professional judgment. *See id.* at 529-30. Unless a prisoner can point to evidence showing the policy is not reasonably related to legitimate penological objectives, sufficient to allow him to prevail on the merits, he cannot prevail at the summary judgment stage. *Id.* at 530.

Turning to the instant action, with respect to the first *Turner* factor, the undisputed evidence shows a rational and valid connection between a legitimate government interest in maintaining prison order and security and restricting inmates' possession and use of tobacco products/prayer oils through Title 15 regulations. The California Legislature identified several

justifying and beneficial reasons behind the California Penal Code's tobacco products ban, such as enhanced prison security, improved inmate health, and reduced operational costs. Jun. 1, 2004 Hearing on A.B. 384 Before the S. Comm. on Pub. Safety, 2003-2004 Legis. (Cal. 2004) (bill analysis)). Furthermore, that prison officials must affirmatively protect inmates from harms that they personally know of is clear. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). Taken together, Defendants' enforcement of the tobacco-products restriction ensures that inmates are safe from foreseeably adverse consequences of using tobacco products. In addition, any restrictions to the use and possession of prayer oils as identified in the RPPM were directly related to ensuring the safety and security of CDCR institutions. Penney Decl. at ¶ 7; Pulley Decl. at ¶ 7. Courts recognize that preserving the safety and security of a prison, staff, and inmates is a legitimate penological interest. *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999); *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (holding that legitimate penological interests include "security, order, and rehabilitation"), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). The court further explains below how the record establishes a reasonable relationship between this legitimate penological interest and the restrictions on an inmate's possession of tobacco/prayer oils.

The record shows that the prohibition of smoking tobacco products at the prisons was directly related to ensuring the safety and security of CDCR institutions. Richey Decl. at ¶¶ 4-7. According to Chaplain Richey, the California Penal Code, Title 15, and the Department Operations Manual ("DOM") all have provisions concerning CDCR inmates and their religious activities, programs, and resources and inmates' use of tobacco products as well. *Id.* at ¶ 4.

Under California Penal Code § 5030.1(a), "inmates under CDCR's custody may not possess or use tobacco products, except in departmentally approved religious ceremonies as outlined in Title 15." *Id.* at ¶ 5. Additionally, inmates have used tobacco products as underground currency to barter items before the ban, which posed security risks to them as some inmates extorted others of their tobacco products. Penney Decl. at ¶ 5; Pulley Decl. at ¶ 5. Moreover, allowing inmates to use tobacco products caused significant health problems for them, which increased the health care cost for CDCR to treat inmates suffering various conditions due to

1    prolonged smoking and other use of tobacco products.  *Id.*

2    Under Title 15, section 3187(b)(2) allows smoking within twenty feet of state owned or
3    occupied buildings in designated areas by each institution head for approved inmate religious-
4    ceremony purposes."  Richey Decl. at ¶ 6.  Under Title 15, section 3188(c)(1), "no one may
5    possess or use tobacco products on the grounds of any institution/facility that houses or detains
6    inmates, except when such use is in departmentally approved religious ceremonies."  *Id.*  Section
7    3188(d) "prohibits inmates' smoking, possession, or use of tobacco products, except as allowed
8    under subsection (c), and considers tobacco as contraband . . . ."  *Id.*  Title 15, section 3189
9    "makes clear that inmates violating sections 3187 or 3188 will be subject to discipline, including
10   administrative and serious rule violations procedures . . . ."  *Id.*  Section 3190 concerns authorized
11   personal religious property that inmates may possess, and the RPPM (incorporated by reference in
12   section 3190(b)), "lists all permitted personal religious items," but "does not list any tobacco
13   products as authorized items for inmates to possess or use."  *Id.*

14   DOM section 31110.1 "identified that California prohibits smoking tobacco products in all
15   state-owned, leased, or occupied buildings," and the "Secretary of CDCR has also prohibited the
16   use and possession of all tobacco products at all institutions and facilities that house or detain
17   inmates . . . ."  *Id.* at ¶ 7.  DOM section 53040.1 "prohibits inmates' smoking, possession, or use
18   of tobacco products, and any tobacco products in inmates' possession are contraband."  *Id.*
19   Section 54030.1(a) "permits inmates to possess in their living quarters or living areas personal
20   religious items outline in the RPPM.  *Id.*  Section 5430.10.9(a) "allows inmates to possess
21   authorized personal religious items in accordance with the RPPM and which are consistent with
22   the six cubic feet limitation."  *Id.*  Section 5430.10.9(b) "states that custody staff shall consult with
23   the [RRC] when recommending disapproval of religious items."  *Id.*  As explained above, the RRC
24   "shall forward recommended approval or disapproval of religious items to the [SRRC] utilizing
25   [CDCR Form] 2279, which has been available to inmates [such as Plaintiff] through their
26   respective housing institutions since December 2014."  *Id.* (brackets added).

27   Meanwhile, as to prayer oils, under the RPPM, inmates may possess only up to four
28   ounces of non-alcoholic and non-flammable prayer oil.  Penney Decl. at ¶ 8, Ex. 1; Pulley Decl. at

¶ 8, Ex. 1.  Further, the only allowed fragrances are kyphi, frankinmyrrh, sage, cedar, musk, lavender, sandalwood, and rose.  *Id.*  Inmates also may not possess or use any perfumes, colognes, or incense sticks and cones.  *Id.*  These restrictions are to ensure that inmates do not use scented liquid material to smuggle in contraband by diluting it in perfumes, colognes, or incense sticks and cones, masking the odor of other contraband with prayer oil fragrances, or causing fires indoors.  *Id.*  Captain Penney claims to have "personally dealt with approximately eight instances in which inmates smuggled in contraband using personal religious items . . . [and] [s]muggling methods included soaking approved paper materials in synthetic marijuana and other liquid drugs in place of religious oils."  Penney Decl. at ¶ 9.  Meanwhile, Chief Pulley alleges as follows:

> between March 2021 and present, CDCR facilities reported at least three instances in which inmates attempted to smuggle contraband, such as CBD oil and other controlled substances, by diluting them in scented liquid allowed as religious personal items.  This figure is a conservative estimate, as individual CDCR correctional facilities do not always immediately report instances of contraband found to the Office of Policy Standardization.

Pulley Decl. at ¶ 9.

These aforementioned reasons, as set forth in declarations by Chaplain Richey, Captain Penney and Chief Pulley, establish a reasonable relationship between the restrictions on an inmate's possession of tobacco products/prayer oils and the penological interests of maintaining institutional safety, security, and rehabilitation.  Thus, this first *Turner* factor weighs in favor of Defendants.

As noted earlier, the second *Turner* factor is "whether there are alternative means of exercising the right that remain open to prison inmates."  *Turner*, 482 U.S. at 89-90.  The restrictions on Plaintiff's access to tobacco products/prayer oils did not deprive Plaintiff of all means of exercising his religious beliefs.  Even if restrictions on Plaintiff's access to tobacco products/prayer oils exist, the evidence shows that Plaintiff knew, or should have known, that he had ample opportunities to request for and possibly secure an accommodation from the prison.  *See* Pl.'s Depo. at 99-104; Richey Decl. at ¶¶ 7-8.  However, as mentioned above, he elected to not seek such an accommodation.  *Id.*  Therefore, this factor weighs in favor of Defendants.

The third *Turner* factor requires the court to consider the "impact accommodation of the

17

asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  Here, the third factor under *Turner* has not been borne out as inmates are permitted to request for accommodations to possess or use tobacco products for "departmentally approved religious ceremonies," Richey Decl. at ¶¶ 5-7, as well as to continue to purchase and use prayer oils in accordance with the current RPPM.  Plaintiff did not seek accommodation here.  Accordingly, neither Defendants' conduct, the current CDCR special purchase order procedure, nor the current RPPM restrictions have had significant negative effects on other inmates or guards.  Thus, this factor weighs in favor of Defendants.

The fourth *Turner* factor requires the court to consider whether there is an "absence of ready alternatives" to the prison policy.  *Turner*, 482 U.S. at 90.  The burden is on the prisoner challenging the regulation to show that there are obvious, easy alternatives to the regulation.  *See O'Lone*, 482 U.S. at 350; *see also Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999).  Ultimately, this factor weighs in favor of Defendants because the restrictions on inmates' use and possession of tobacco/prayer oils were not an exaggerated response to prison concerns.  As mentioned, the record shows that inmates have used tobacco products "as underground currency to barter items before the ban, which posed security risks to them as some inmates extorted others of their tobacco products." Penney Decl. at ¶ 5; Pulley Decl. at ¶ 5.  Furthermore, there have been past issues of inmates using prayer oils to smuggle in contraband items.  Penney Decl. at ¶ 9; Pulley Decl. at ¶ 9.  Moreover, even with the aforementioned issues involving prayer oils, inmates are still allowed to purchase up to four ounces of eight types of prayer oils.  Penney Decl. at ¶ 8, Ex. 1; Pulley Decl. at ¶ 8, Ex. 1.

Having considered the various *Turner* factors, the court concludes that Defendants' conduct was reasonably related to the legitimate penological interests in staff and inmate safety.  Plaintiff does not show or raise a triable issue of fact that his right to free exercise of religion was improperly impinged upon by Defendants denying plaintiff's access to tobacco products/prayer oils.  Defendants are therefore entitled to judgment in their favor on Plaintiff's First Amendment claim.

V. **CONCLUSION**

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment.[9] Dkt. 29.

The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket No. 29.

IT IS SO ORDERED.

Dated: March 20, 2023

_____
DONNA M. RYU
United States Chief Magistrate Judge

---

[9] The court's finding that Defendants are entitled to summary judgment as a matter of law as to Plaintiff's claims obviates the need to address their alternative arguments regarding an entitlement to qualified immunity.

19